Final case on the calendar is Todd C. Bang v. Uber Technologies. May it please the Court, I'm Todd Bang, the plaintiff appellant. There are two exemptions at issue here. One is for calls that are not made for a commercial purpose, and the second is for calls that are made for a commercial purpose but do not include an advertisement or constitute telemarketing. First, Uber's calls were clearly made for a commercial purpose based on the simple fact that they were made in furtherance of the company's interests. To be a call, a commercial call, it does not have to explicitly try to sell something or even have the natural effect of selling something. As discussed in the brief, footnote 459 on page 9 of the brief gives examples of commercial calls. Those examples clearly do not involve an explicit attempt to sell anything or types of calls that would even have the natural effect of selling something. Calls to tell employees that the business is opening up late that morning due to weather, confirming the arrival of a shipment, et cetera. Now, moving on to the second exemption at issue, which is for calls that are made for a commercial purpose and do not include an advertisement or constitute telemarketing. Well, first, the definition of advertisement is, this is both the statutory and the FCC's regulatory definition, is any material advertising the commercial availability or quality of property, goods, or services. Well, Uber's messages, although the bulk of them mathematically, let's say, were political, included material that was that method definition of advertising. The calls talked about getting a reliable ride home. You can get a ride home if you don't live in Manhattan. Uber ended the days when New Yorkers had to worry about getting a reliable ride home. The problem with these calls is that essentially they include permissible material, which is the political portion of the call, and they also include impermissible material. The problem, as I get into, I think, at length in the briefs, is that if Uber were allowed to make these calls that indisputably included advertising material, then the loophole that would be created would basically swallow the entire statute. I could advertise my own law practice by saying, hi, I'm Todd Bank, and I've been representing people who get illegal robocalls, and now Congress is thinking of amending the statute, dah, dah, dah, why don't I call you Congressman, et cetera, et cetera. But that's a way to sneak in an advertisement because someone who hears that message will say, oh, I can call this guy Todd Bank to be my lawyer. In this case, oh, I can look into this Uber thing and see if I can get a reliable ride home from Manhattan. So there's no question that the calls, if exempted, would really create an enormous ability of anybody to get around the statute because there's always going to be some either pending legislation or even a proposal. Hi, this is ExxonMobil. We provide high-octane gas. Please call your congressman and tell them to introduce a bill for offshore drilling, whatever the case might be. Now, the district court on page 5 of the order, which is at 8-20 of the appendix, said that an advertisement under the TCPA is limited to material that promotes the sale of a product or service because, and now quoting the FCC, messages that do not seek to sell a product or service do not tread heavily upon the consumer interest implicated by the TCPA. Now, first, advertising material, as I said, need not be explicit. Advertising material can also be the type of material that were in Uber's messages, which would have the natural effect of generating consumer interest or increasing sales. In fact, the FCC has defined telemarketing, which is also prohibited in robocalls. It's telemarketing, not advertising, but telemarketing is more strict. Telemarketing is defined as a call that has the explicit purpose of trying to make a sale. Advertising is a broader definition. And in fact, what the district court didn't include, but footnote 459 in the 2003 TCPA order, that footnote comes right after what I just quoted from the district court. And that footnote gives examples of commercial calls that are not advertising calls. And those calls clearly are different in kind, different in degree from those portions of the calls at issue here in Uber's messages. And again, those calls are telling employees it's going to be a late opening. But what's more than that is those types of calls, that is commercial calls that do not include advertising, those are calls that are made to people with whom, every example the FCC gave, those are calls that are made to people with whom the caller already has a relationship, an employee, a customer to confirm a shipment, et cetera. Uber's calls were made to the public in general. I am not an Uber customer. That's not how they obtained my number. Now, moving on to the state law claims. The first question is whether GBL 399P even prohibits class actions on its face. I know that issue wasn't raised below, and it was raised in the reply brief here. But it is a purely legal issue. For the first time. Correct. That's correct. It is a pure issue of statutory interpretation. In fact, Uber, in its own brief on page 25, note 4, addressed the issue. So there's no prejudice in having this court. How do we deal with what appears to be the law of the circuit in the United States against USF that, quote, we will not consider an argument raised for the first time in a reply brief? Well, I'm not familiar with that specific case. I don't think it was discussed in the briefs. But, so I couldn't. It's one of many cases. Sure, absolutely. But, again, it's a prudential rule. There are no new facts at issue here. It's purely a legal issue of statutory interpretation. And Uber raised the issue itself. So how can there be prejudice to Uber? And is this court really going to decide sort of a constitutional issue regarding Shady Grove without examining whether the statute even calls for that analysis, which, as explained in the briefs and as Amicus explains, the statute clearly does not prohibit class actions. And, in fact, but, again, even if it did, there's still the fact that Shady Grove holds, and this court has since Shady Grove has also followed the plurality in Shady Grove, that even if there's a conflict with the state law, as long as the federal rule at issue is valid, which Rule 23 is, I don't think there's any debate about that, then it applies. Rule 23 does not have any bearing on who can recover for the violation of the GBL 399P. It simply addresses, like CPLR 901B in Shady Grove, it simply addresses how that action may be brought in, in what context, in what procedure. Just briefly on the issue of Article 3 standing. I personally received the robo call, so the particularity aspect is clearly satisfied. And so is the concreteness. I received the robo call, and also the state, this only deals with the state law claims. The state legislature has said that robo calls like this must include the address of the caller. Obviously, the legislature considered that to be important, and the address was not provided. It would have enabled me to write to the company if I wanted to, and so on. But that was a judgment of the New York legislature. And the Supreme Court, in dealing with federal laws, has held twice, and we discussed it in the briefs, that the provision of information, when required, can lead to article, does give rise to article 3 standing, when it is not disclosed. Also, on the issue of CAFA jurisdiction, I believe that just by asserting that my claims arise, the state law claims under 28 USC 1332 D2A CAFA. I believe that necessarily means that I'm saying there's $5 million in controversy. I know that I wasn't worded the $5 million part, not worded carefully. And therefore, I would request that if the court doesn't agree that my assertion of the statute is sufficient, then I should be allowed to have leave to replead. And finally, on the First Amendment issue, even if the TCPA specifically prohibited or included the prohibition of political robo calls, it would be a valid time, place, and manner restriction because there is no general right to use my home telephone number as a medium to engage in political pre-recorded messages. My phone number is not a sort of an oral billboard for a defendant. But again, the point is, we don't even have to get to that issue because the robo calls included the advertising material. And it's that material that I'm challenging. I'm not challenging the political portion of the material. But again, in closing, I just want to say that whatever the defendant's motives, and I'm not saying they were suspect necessarily, I'm not making that assumption. The problem is, the fact is, the calls contain advertising material under the definitions of that term. And if the court were to allow these calls to be exempt, it would create a giant loophole in the statute that anybody could come up with lots of scenarios that would enable them, excuse me, to violate the statute. About the state law. Yes. Is this a good candidate for certification to the New York Court of Appeals to answer the question of whether New York law prohibits class actions under section 399-P? I really don't think so, Your Honor, because I think it's very clear when subdivision 9 says an individual may bring his own action, and subdivision 8 doesn't even talk about class actions. It talks about attorney general actions, and I even explained in the brief. Let's say the attorney general brought an action, and I was given money as a result. That still wouldn't stop me from exercising the private right of action. I don't think there's really – I think if the legislature had wanted to prohibit class actions, it could have, as other statutes do that we discussed in the brief, like in Alabama and others. I think it clearly could have stated that. I don't think they had class actions in mind. Remember, the legislature had already had section 901B, which prohibits statutory damages from being sought in a class action. Again, that's the issue that was resolved in favor of class actions in Shady Grove. So, no, I don't think it's necessary to do that, and I think also if the court for whatever reason did not want to address the issue, I think Shady Grove makes it perfectly clear that even if it did prohibit class actions, that that restriction would not apply in federal court. Thanks very much. Thank you. You have reserved some time. Mr. Palmore. Thank you, Your Honor. May it please the Court, Joseph Palmore for Uber Technologies. Mr. Banks' TCPA claim fails as a matter of law because the calls he challenges were exempt political communications, and the district court had no jurisdiction over the state law claim for multiple reasons, including lack of standing, and I'd like to address both claims in turn. Starting with the TCPA claim, Mr. Bank does not dispute that the FCC has properly exempted political calls from the scope of liability under the TCPA. Moreover, he does not dispute that the calls at issue here conveyed a political message. Instead, as he says in his brief and as he just said here at the podium, his argument is that he can pluck out certain phrases from the messages, take them out of context, look at them in isolation, and then condemn them as impermissible advertisements. I would suggest that there's no support for that dramatically acontextual approach to liability under the TCPA. These phrases about Uber's service and its quality provided critical context for the political message of the calls. A listener could not understand why he should be motivated to oppose a bill that would, quote, and why he should care about a bill ending it. So those statements provided indispensable critical context to the political message, and to omit them would have distorted that message and considerably weakened it. In sum, the calls here proposed a political transaction, not a commercial one, and I think that the fundamental question when looking at a call like this is, what is the ask? What is the caller asking the listener to do? Is the caller asking the listener to buy a product or a service, or is the caller asking the listener to take political action? I would suggest that the only fair reading of these calls is that the caller was quite expressly asking the listener and the call recipient to exercise, to take political action with respect to pending legislation. If there are no questions about the TCPA claim, I can turn to the state law issue. What about the possibility of certification? What's your view on that? We don't think that certification, of course, is always an option when there's a state law question like this one that's novel. But we don't think it's appropriate here for a couple reasons, Your Honor. One is the state law claim is waived, as you recognize under general waiver principles. This is an argument that was not raised until the reply brief. It was never raised in the district court. I don't know how the New York Court of Appeals would react to being asked to opine on a novel question of state law that wasn't even properly presented in federal court. Second, we think that really resolving that issue and the broader Shady Grove issue is unnecessary in this case because that portion of the judgment below, the portion dismissing the state law claim for lack of jurisdiction, can be affirmed for a much more basic reason, which is that there's no standing here. The waiver thing is a little odd. The district judge didn't really discuss this. And then he files his appellate brief. And your answer is basically you have no—you can't bring a class action. So, I mean, is it really a waiver until—I mean, you brought it up, the other side answered, amicus answered, then he adopts it in his reply brief. I mean, he had an obligation to say in his opening brief that, yes, 399P provides for class action. He did, Your Honor, but this was argued in the district court. So we moved—we said to the district court, to Judge Gleeson, that there was no jurisdiction under the Class Action Fairness Act because this state law claim could not be maintained as a class action because of this in-his-own-name phrase. That was what we relied on, and that's what the district court agreed with. And then Mr. Bank filed his opening brief, and he accepted that construction of state law and then made his Shady Grove argument. It wasn't until the amicus filed her brief that this state law claim was injected into the case. Okay, so it seemed as if there were agreement between the bank and Mr.—I mean, Mr. Banks and Uber that 399P did not allow for class action. That's correct. In the district court, that wasn't a contested issue. In the opening brief that Mr. Bank filed, that was not a contested issue. There was disagreement about what that meant for purposes of jurisdiction. You're going to talk about standing. Right, so I think this—we think the district court's conclusion that there was no original jurisdiction under CAFA was entirely correct for the reasons that we describe in our brief. But we think that that judgment can be affirmed for an even more basic reason, which is lack of standing, and the court doesn't need to wade into those Shady Grove waters in this case. And the issue is this, that Mr. Banks' state law claim is based entirely on the alleged absence of Uber's address in the call. So he says the state law requires Uber to give its name. It did. It requires Uber to give its phone number. It did. But he points out Uber—the state law requires Uber to give its mailing address, and he alleges that the calls didn't comply with that requirement. The fundamental problem is he's identified no injury at all, much less a concrete one, flowing from the absence of the mailing address in these calls. And he's—what he's—all he's done is allege a bare procedural violation of the statute, unconnected to any injury. And the Supreme Court's decision in Spokio makes clear that that is not enough. There has to be some kind of concrete and particularized injury flowing from a statutory violation. The existence of a violation by itself doesn't get you across the Article III barrier. The informational standing cases to which Mr. Bank alludes are entirely different. Those are cases—and the Supreme Court in Spokio cited and discussed those cases and distinguished them from a situation like this. Those are cases where Congress has provided that certain otherwise private, non-public records shall be disclosed about, for instance, donations to political committees or about the functioning of the federal government. And what the courts have said was in those situations, we can presume harm from the failure to comply with that public disclosure obligation because this information will otherwise not be disclosed. And it's widely recognized that there is a value in our political system in citizens having access to that kind of information about the workings of the— Would he nevertheless have a state action to bring even if he didn't have Article III standing? He very well might have a state action in state court, and of course that's one of the reasons why that there is no standing here because this is a state law claim. So what the court said in Spokio was that Congress, because it legislates against the backdrop of Article III, is entitled to a certain degree of deference, not unlimited deference, but a certain degree of deference when deciding to create injuries that can be recovered for in federal court. But of course the New York legislature, when it enacts a statute like 399P, isn't thinking about Article III, and that's not a criticism of the New York legislature. It doesn't need to think about it. And so there's no reason to extend that kind of deference to the New York state legislature. It can have its own standing rules for its own courts, and this claim could be brought by Mr. Bank in state court. So I think that, again, we think that the district court's conclusion on CAFA is entirely correct, but this lack of standing, especially in light of not only Spokio but this court's earlier decision in Kendall v. Avon Products, which we cite, make entirely clear that this kind of bare procedural violation, unconnected to any harm at all or even a conceivable theory of harm, doesn't get you there under Article III. More has to be alleged. And quickly on the CAFA issue, which again the court, I don't think, needs to address here. It has to be assumed that there is a state law prohibition on this case being maintained as a class action. And then we look to Shady Grove, and there was obviously a splintered decision. But we think that the Tenth Circuit in Garment got it exactly right that Justice Stevens' opinion is the controlling opinion in Shady Grove. It was a narrower basis for concluding that the state law class action limitation did not apply in that case. Justice Scalia, for justice plurality, said that state law class action limitations will never apply. It was a bright-lined categorical rule. Justice Stevens said sometimes they will, sometimes they won't. I think in this case the state law limitation doesn't, but it was a narrower basis for that judgment. And we think under Justice Stevens' approach, the in-his-own-name limitation on class actions in 399P would apply in federal court because it's limited to one statute. It is, while procedural on its face, so bound up with a substantive right and substantive remedy that it goes to the substance of the state law right and remedy. And under the Rules Enabling Act, it would therefore apply. Thank you. Thank you. First, these calls did not have to have the advertising portion to make their statements clear. Again, it goes back to the loophole issue. But the point is these calls could have said there's pending legislation to limit ride-sharing services. Please call your congressman. I could have made that call to somebody, and I wouldn't have to tell them specifically that Uber gives a reliable ride home. There are other services and so on and so forth. So I don't agree with that, that these calls, there was almost an obligation, if you will, to include advertising material in the calls. They could have been limited and really have to be limited to strictly the political content in order to avail, to be availed of the exemption. Otherwise, the loophole just would essentially, like in this case, would eliminate the statute. Thank you. Second, going back to the issue of the address, the legislature clearly considered it important that I be given the address, just like in the statutes at the Supreme Court address with respect to donor information. It's information that the legislature deemed important. It would have made it easier for me to contact the company, for example, or know more about the company, where they're headquartered and so on. So I don't agree that there's, I would say there is Article III standing. I was entitled to have that information. Spokio is completely different. They gave someone's wrong zip code or something. The person didn't even know about it or was not affected by it in any way, shape, or form. Spokio is completely different. I was entitled to this information for an obvious reason, and I wasn't given it. It's not like they said they had to spell a random word or something. This was material information that I could have used. As for Justice Stevens' concurrent opinion, and I get into it quite at length in the reply brief, that opinion clearly, clearly is not the controlling opinion of the court. Just the plurality, and since then this court as well, has specifically said that only the validity of the federal rule, in this case Rule 23, is what determines whether it applies. Justice Stevens, in contrast to the plurality in Shady Grove and in contrast to what this court has held both before and since Shady Grove, said that you also, in addition to considering the validity of federal law, whereas the plurality in this court stops there, Justice Stevens would continue to analyze the state law at issue, whether it's substantive, procedural, et cetera. So it's overwhelmingly clear, even though a couple of courts, not all, a couple of courts have used Justice Stevens' concurrence, perhaps as persuasive authority, but those courts, and we discussed it in the reply brief, did not analyze the issue, didn't even cite the leading case marks on the issue. The fact is Justice Stevens' opinion was explicitly different. Thank you, Mr. Beck. Yes, thank you. We reserve the decision. Thank you. We are adjourned. Court stands adjourned.